UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELIOT FLORES, #811654,

        Plaintiff,

v.

ERICA HUSS, et al.,

        Defendants.
_____/

Case No. 2:22-cv-186

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 19.)

Plaintiff — state prisoner Eliot Flores — filed suit pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12101 et seq., on September 23, 2022. In his unverified complaint, Flores alleged that while he was incarcerated at the Marquette Branch Prison (MBP) in Marquette, Michigan, Defendants[1] violated his rights under the Americans with Disabilities Act as well as the Eighth Amendment. (ECF No. 1, PageID.4-5.) More specifically, Flores alleged that on July 10, 2020, Defendants deployed chemical

---

[1]    Flores named the following MBP employees as defendants: (1) Warden Erica Huss, (2) Health Unit Manager (HUM) Brenda Jones, (3) Nurse Unknown Christy, (4) Sergeant (Sgt.) Unknown Wyatt, (5) Nurse Unknown Wixtorm, and (6) Lieutenant (Lt.) Unknown Havenor. (ECF No. 1, PageID.2.)

agents against a nearby inmate without first removing Flores from the housing unit. (*Id.*, PageID.3.) Flores alleged that Defendants took this action despite their knowledge that Flores suffers from chronic asthma, and that the second-hand exposure to the chemical agent caused him to suffer an asthma attack. (*Id.*, PageID.3-4.) Defendants allegedly went on to ignore the asthma attack, telling Flores that he would be fine instead of providing him with medical care. (*Id.*)

Defendants now move for summary judgment, asserting that Flores did not properly exhaust the available administrative remedies. (ECF No. 19.) Defendants argue that Flores pursued only one grievance through Step III of the MDOC's grievance process, and that this grievance did not name Defendants, or specifically mention Flores's July 10, 2020, encounters with Defendants. (ECF No. 20, PageID.76-77.) Flores did not respond.

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment. In the undersigned's opinion, there are no genuine issues of material fact bearing on exhaustion. Defendants are correct in that Flores did not specifically identify them in the relevant Step I grievance. But Defendants fail to acknowledge that Flores did not specifically identify *anyone* in his Step I grievance. Nevertheless, the MDOC considered and denied the grievance on its merits at all three steps of the grievance process.

Although the undersigned recommends that the Court deny Defendants' exhaustion-based motion for summary judgment, the undersigned recommends that

the Court dismiss Flores's case because Flores appears to have abandoned its prosecution.

## II. Factual Allegations

Flores's complaint allegations are straightforward. (ECF No. 1, PageID.3-4.) Flores says that he suffers from chronic asthma, and that Defendants Huss, Jones, Wixtorm, Christy, Wyatt, and Havenor were aware of his condition. (*Id.*, PageID.3.) But despite this knowledge, Defendants authorized the use of chemical agents against an inmate in Flores's housing unit without first removing Flores from his cell. Flores says that his second-hand exposure to the chemical agents triggered a severe asthma attack. (*Id.*) But when Defendants Huss, Christy, and Wixtorm visited Flores's cell during his asthma attack, they did nothing to help him. Instead, they simply told Flores that he would be okay, and directed him to "just breathe." (*Id.*) When other inmates called out to Defendants in an attempt to obtain aid for Flores, Defendants allegedly responded: "We don't care, let the n— die." (*Id.*, PageID.4.) Flores says that he is only alive because he utilized his rescue inhaler. (*Id.*, PageID.3.)

## III. Defendants' Motion for Summary Judgment

The undersigned first addresses Defendants' motion for summary judgment based on Flores's failure to exhaust the available administrative remedies prior to filing suit.

3

**a. Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138

---

[2] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### b. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

5

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

6

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The

7

respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### c. Analysis

As set forth above, Defendants argue that Flores pursued only one grievance through Step III of the MDOC's grievance process, and that the grievance did not exhaust Flores's claims because it did not name Defendants. (ECF No. 20, PageID.76-

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

77.) The grievance in question is grievance <u>MBP-20-02-830-3F</u>. The Step I grievance form for grievance <u>MBP-20-02-830-3F</u> is shown below.

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
>
> Date Received at Step I: 2-16-2020   Grievance Identifier: MBP 2002008 300315
>
> Name: Eliot, Flores  Number: 811634  Institution: M.B.P.  Lock Number: G/2nd/#19  Date of Incident: 7-10-20  Today's Date: 7-15-20
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? July 10, 2020
> I brought this issue to officer Tucker and other officers and to the Lieutenant on shift working that day... Both people said "Oh well, grieve it." Taylor
>
> On July 10, 2020, @ between the hours of 12:20 pm and 1:00 pm, I suffered a horrible asthma attack. It was brought upon because 1st shift officers "gassed" an inmate on the shower side, without going through proper procedure. By policy, staff are supposed to pull inmates with asthma, out the unit before they gas an inmate. Myself, along with a few other inmates, were trying to get officers attention, so they can address the issue, but no staff member came to help. This is an outright violation of my rights, and this shit needs to be corrected. This has happened multiple times in the past also...
> Wang
>
> Grievant's Signature: Eliot Flores

(ECF No. 20-3, PageID.96.)

Defendants are correct in asserting that Flores's Step I grievance did not specifically name them, because Flores's Step I grievance did not specifically name anyone. Instead, he asserted that "1st shift officers", "officers", and "staff members" violated his rights. Defendants are also correct in asserting that Flores's Step I grievance ran afoul of MDOC P.D. 03.02.130 at ¶ S, which requires prisoners to include "[d]ates, times, places, and names of all those involved in the issue being grieved" in their Step I grievance. But Flores's Step I grievance was considered and

denied on its merits. (ECF No. 20-3, PageID.97.) And that denial was upheld at Steps II and III. (*Id.*, PageID.93, 95.)

The undersigned reiterates that when prison officials waive enforcement of their procedural rules and consider a procedurally defective claim on its merits, those procedural defects will not bar the prisoner's subsequent federal lawsuit. *Reed-Bey*, 603 F.3d at 325 ("[T]he equation changes when the State does not enforce its own rules. When prison officials decline to follow their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." (citing *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 891 (6th Cir. 2009))). Flores's grievance records establish that this is precisely what occurred here; Flores failed to identify the specific individuals involved in the July 10, 2020, incident, and prison officials nonetheless considered his grievance on its merits. The undersigned therefore recommends that the Court deny Defendants' motion for summary judgment based on Flores's failure to exhaust his administrative remedies.

### IV.     Flores's Failure to Prosecute

Although the undersigned recommends denying Defendants' summary judgment motion, the undersigned notes that the Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order. It is well settled that the Court has inherent authority to dismiss *sua sponte* an action with prejudice for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). As the United States Supreme Court has explained:

11

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., id., at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:
>
> '(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.'
>
> Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.
>
> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted).  And this Court's rules provide that a case may be dismissed for want of prosecution when a plaintiff fails "to keep the Court apprised of a current address."  W.D. Mich. LCivR 41.1.

12

Flores has not filed anything with this Court since this case was removed from prisoner early mediation in December of 2023.  And according to the Michigan Department of Corrections (MDOC) Offender Tracking Information System, Flores was paroled on May 8, 2024.  *See MDOC Offender Tracking Information System*, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=811654 (last visited June 20, 2024).  Yet Flores has failed to keep the court apprised of his current address.  It therefore appears that Flores has abandoned the prosecution of this case.

## V.     Recommendation

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment (ECF No. 19).  But the undersigned recommends that the Court dismiss Flores's case because Flores appears to have abandoned its prosecution.

If the Court accepts this recommendation, this case will be dismissed.

Dated:   June 20, 2024

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).